OPINION
{¶ 1} Defendant-appellant Billy Neff appeals his conviction and sentence from the Canton Municipal Court on one count of receiving stolen property. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On February 9, 2005, appellant was indicted by the Grand Jury on one count of receiving stolen property in violation of R.C. 2913.51(A), a misdemeanor of the first degree. The case was then remanded to Canton Municipal Court. At his arraignment in Canton Municipal Court on February 23, 2005, appellant entered a plea of not guilty to the charge.
 {¶ 3} Thereafter, a jury trial commenced on May 5, 2005. The following evidence was adduced at trial.
 {¶ 4} Kevin Wellen is a self-employed carpet installer who lives at 919 8th St. N.W. in Canton, Ohio. On December 31, 2004, at approximately 2:00 p.m., Wellen left his house to go and borrow a van since his own van was not dependable and he had a job out of town. As Wellen was returning from picking up the borrowed van, his wife called him and told him that his own van, which had been parked in front of Wellen's house and which leaked oil "pretty bad", was missing. Transcript at 21. All of Wellen's carpet installation tools had been in the van. Wellen's wife then called the police.
 {¶ 5} When he arrived home, Wellen noticed a trail of oil leading from his house down the street. After following the same, Wellen found his van on the 700 block of McGregor. Wellen ended up at appellant's house and told appellant, who Wellen knew was also a carpet installer, that his van had been stolen and that he was looking for his tools. Appellant stated that he had not stolen Wellen's tools. The following day, Wellen found one of his payroll receipts and "one of the lottery tickets I usually play" sitting at the bottom of appellant's trash can. Transcript at 24.
 {¶ 6} On cross-examination, the following testimony was adduced when Wellen was asked whether the police found anything in appellant's van:
 {¶ 7} "Q. All of your tools were taken out of the van?
 {¶ 8} "A. Yes, sir.
 {¶ 9} "Q. Nothing was left in the van?
 {¶ 10} "A. Some miscellaneous small tools.
 {¶ 11} "Q. What number of items would you say this added up to?
 {¶ 12} "A. Well, the tools that were stolen?
 {¶ 13} "Q. More than 50, more than 100?
 {¶ 14} "A. Fifty to 100. If you're counting like individual screwdrivers and things like that." Transcript at 28.
 {¶ 15} Appellant testified on redirect that he positively identified the carpet kicker found by police on appellant as his.
 {¶ 16} Canton Police Officer William Watkins also testified at trial. Officer Watkins testified that when he approached appellant on December 31, 2004, appellant was in the process of entering his house with a carpet kicker. Officer Watkins and appellant left and went "down to the where the complainant was, we made contact with Mr. Wellen and Sergeant Brown." Transcript at 32. After remembering that appellant had been entering his house with a carpet kicker, Officer Watkins went back to appellant's house and retrieved the same. According to the officer, the carpet kicker was black "with a little bit of shine to it" and had just been painted. Transcript at 33. There was blue paint underneath the black. The officer further testified that Wellen positively identified the carpet kicker as one that had been taken from his van.
 {¶ 17} When asked what appellant had to say about the carpet kicker, Officer Watkins responded as follows:
 {¶ 18} "I was speaking with the Defendant, I asked him, I said, it's not a normal thing to paint this type of a tool, you know what I mean, simply because it's used to put carpet down and it's actually a lot of friction against because you put it on the carpeting, you kick it and it rubs against the carpet, so, you know, I asked him, I said, painting this tool is not something that would probably normally be done. He kind of paused and he said, well, I just decided to wake up today and paint it, I wanted to test out my new paint gun. I asked him, I said, well if you should happen to be putting down a light color carpet and you just painted this tool, there's a possibility that the paint from this tool would actually get on the carpet, especially if it was a light colored carpet. Once again, there was a pause, then he stated, well I will only use it for dark colored carpeting. At that point I really found that odd, especially seeing how there was in his vehicle he had approximately three other carpet kickers that weren't painted and they were of a dark color, I think black, blue and brown, so I found that to be odd because he already had a black knee kicker that was actually painted from the factory and treated so that it wouldn't leave any kind of paint fragments on a carpet or cause any kind of staining, but yet still having a knee kicker tool here that's painted by him, and it would actually leave fragments or possibly stain a carpet, so I found that to be very odd." Transcript at 33-34. According to the officer, appellant's other carpet kickers had not been painted and showed normal wear and tear from use.
 {¶ 19} After the trial court overruled his Crim.R. 29 motion for judgment of acquittal, appellant called Timothy Yapko, his employee, as a defense witness. Yapko testified that he helps appellant install carpeting and that he saw an E-bay computer picture of the carpet kicker in question "right before Christmas". Transcript at 40. Yapko testified that appellant had purchased the carpet kicker on E-bay before Christmas and that after appellant received the same two or three days after Christmas, appellant opened up the box containing the same and showed it to him. On cross-examination, Yapko testified that appellant has two other carpet kickers, both with a lot of wear and tear. According to Yapko, neither of the carpet kickers had been painted by appellant.
 {¶ 20} Appellant then took the stand in his own defense. Appellant testified that he had met Kevin Wellen once before while laying carpet and that Wellen lived a few blocks from appellant's house. Appellant testified that he was the winning bidder of a carpet kicker in an E-bay auction that ended on December 16, 2004, and that his bank statement showed a Paypal transfer[1] on December 20, 2004, in the amount of $53.00, the price of the kicker. Copies of appellant's bank statement and appellant's E-bay receipt, which shows a blue carpet kicker, were admitted into evidence. According to appellant, he received the kicker right after Christmas and decided to paint it to practice using his airbrush. Appellant testified that he painted the kicker black and then put a couple of clear coats on the kicker so that the black paint would not rub off onto carpeting. Appellant indicated that he was intending to use the carpet kicker in his house that day.
 {¶ 21} On cross-examination, appellant testified that he did not paint any other of his carpet kickers.
 {¶ 22} At the conclusion of the evidence and the end of deliberations, the jury, on May 5, 2005, found appellant guilty of receiving stolen property. As memorialized in a Judgment Entry filed the next day, appellant was sentenced to 180 days in jail, with all but forty-five (45) days suspended. Appellant was given credit for one (1) day served in jail and was ordered to serve the balance of his jail time on house arrest. In addition, appellant was fined $100.00, was ordered to perform 100 hours of community service, and was ordered to pay restitution.
 {¶ 23} Appellant now raises the following assignments of error on appeal:
 {¶ 24} "THE APPELLANT WAS DENIED HIS RIGHT TO A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT.
 {¶ 25} "THE TRIAL COURT'S FINDING OF GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 {¶ 26} For purposes of judicial economy, we shall address appellant's assignments of error out of sequence.
 II {¶ 27} Appellant, in his second assignment of error, argues that his conviction for receiving stolen property was against the manifest weight and sufficiency of the evidence. We disagree.
 {¶ 28} In considering an appeal concerning the sufficiency of the evidence, our standard of review is as follows: "[T]he inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 273, 574 N.E.2d 492.
 {¶ 29} Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph one of the syllabus.
 {¶ 30} Appellant, in the case sub judice, was convicted of receiving stolen property in violation of R.C. 2913.51(A). To find the appellant guilty of receiving stolen property as alleged in the case at bar, the trier of fact would have to find appellant received, retained, or disposed of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense. R.C.2913.51(A).
 {¶ 31} In the case sub judice, testimony was adduced at trial that Wellen positively identified the carpet kicker located on appellant as one that had been stolen from his van. Wellen's van, which had been reported stolen, was found approximately 150 feet from appellant's house. In addition, the next morning, Wellen found his pay stub and lottery ticket in the bottom of appellant's trash can.
 {¶ 32} The carpet kicker that the police found with appellant, which was originally blue, had been freshly painted black and still had a bit of shine to it. Appellant told the police that he had painted the carpet kicker that morning since he wanted to test out an airbrush gun before using it to paint his car. Three other dark colored carpet kickers, including a black one, brown one and a blue one, were found in appellant's van. Testimony also was adduced that it was not usual to paint a carpet kicker black since the paint could rub off onto carpeting. Appellant himself testified that he had never painted a carpet kicker before. At trial, Officer Watkins testified that it was odd that the carpet kicker had been painted since "he [appellant] already had a black knee kicker that was actually painted from the factory and treated so that it wouldn't leave any kind of paint fragments on a carpet or cause any kind of staining, but yet still having a knee kicker tool here that's painted by him, and it would actually leave fragments or possibly stain a carpet . . ." Transcript at 34.
 {¶ 33} While appellant notes that he was able to produce an E-bay listing, receipts and bank statements showing that he had purchased "this" particular carpet kicker, as opposed to appellant's other carpet kickers, two weeks prior to this incident, the jury, as trier of fact, clearly did not find appellant credible. While appellant's E-bay receipt pictures a blue carpet kicker, a blue carpet kicker was found in appellant's van. It was not unreasonable for the jury to conclude that the carpet kicker found in appellant's van, rather than the one they found with him on December 31, 2004, was the one that he had purchased on E-bay.
 {¶ 34} In short, viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of receiving stolen property. We further find that the jury did not clearly lose its way and create such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.
 {¶ 35} Appellant's second assignment of error is, therefore, overruled.
 I {¶ 36} Appellant, in his first assignment of error, argues that his right to a fair trial was denied due to prosecutorial misconduct. We disagree.
 {¶ 37} In the case sub judice, appellant, before testimony commenced, made an oral motion in limine to exclude any hearsay testimony from children who were mentioned in the police report, but not on the witness lists. The children provided Wellen with a description of the man who allegedly had stolen his van. According to the children, the man wore glasses, a gray t-shirt and light blue jeans. Appellant, when Wellen went to his house on the day in question, matched the description.
 {¶ 38} The trial court granted the motion in limine, stating that the children's statements "should not be commented on in court." Transcript at 6. However, during closing arguments, the prosecutor mentioned more than once that appellant matched the description "right down to the clothes". Appellant now argues that such remarks denied him a fair trial since they "left the jury with the impression that evidence was presented during the trial establishing that the Appellant matched the description of an individual who had been seen with the stolen van."
 {¶ 39} The record indicates that defense counsel did not object to any of the above statements made by the prosecutor during closing argument. An appellate court need not consider an error which could have been addressed or corrected if it could have been, but was not called to the attention of the trial court. State v. Williams (1977), 51 Ohio St.2d 112,364 N.E.2d 1364, paragraph one of the syllabus, vacated in part on other grounds. Because defense counsel did not object to these statements by the prosecutor during closing arguments, we must examine this issue under the plain error doctrine. Plain error is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial court clearly would have been otherwise." See Crim.R. 52(B); State v. Underwood (1983), 3 Ohio St.3d 12,13, 444 N.E.2d 1332.
 {¶ 40} Generally, a prosecutor's conduct at trial is not grounds for reversal unless that conduct deprives the defendant of a fair trial. State v. Loza (1994), 71 Ohio St.3d 61, 78,641 N.E.2d 1082, overruled on other grounds. Both the prosecution and the defense have wide latitude during opening and closing arguments; questions as to the propriety of these arguments are generally left to the trial court's discretion. Id. at 78; Statev. Brown (1988), 38 Ohio St.3d 305, 316, 528 N.E.2d 523. A closing argument must be reviewed in its entirety to determine whether prejudicial effect occurred. State v. Frazier,73 Ohio St.3d 323, 342, 1995-Ohio-235, 652 N.E.2d 1000. The test for prosecutorial misconduct is whether the prosecutor's comments were improper and, if so, whether those remarks prejudicially affected the defendant's substantial rights. State v. Eley,77 Ohio St.3d 174, 187, 1996-Ohio-323, 672 N.E.2d 640, overruled on other grounds; State v. Lott (1990), 51 Ohio St.3d 160, 165,555 N.E.2d 293.
 {¶ 41} Upon our review of the prosecutor's comments, we agree these statements made during closing arguments were improper and alarming in view of the trial court's statement that it was granting appellant's motion in limine. However, we find that appellant's substantial rights were not prejudicially affected based upon the trial court's instruction to the jury that closing arguments were not evidence and based upon the overwhelming evidence of guilt.
 {¶ 42} Appellant's first assignment of error is, therefore, overruled.
 {¶ 43} Accordingly, the judgment of the Canton Municipal Court is affirmed.
Edwards, J., Gwin, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Canton Municipal Court is affirmed. Costs assessed to appellant.
[1] Paypal is used as a method for paying for E-bay purchases.